**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL BALDWIN** (#2014-0507298), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15 C 2478 |
| | ) | |
| **TOM DART**, etc., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Michael Baldwin, an inmate held in custody at the Cook County Department of Corrections ("County Jail"), has brought this pro se 42 U.S.C. § 1983 ("Section 1983") action against Cook County Sheriff Thomas Dart, three correctional officers and a nurse, alleging that jail personnel were deliberately indifferent to a back injury that Baldwin sustained when he slipped on water in his cell. Before this Court for preliminary review are Baldwin's Complaint and its accompanying In Forma Pauperis Application ("Application").

## Background

According to Baldwin, on the afternoon of February 20, 2015 he got down from the top bunk in his cell and slipped on a puddle of water, injuring his back. Other inmates notified Correctional Officer Brody of the incident, and about an hour after the incident occurred Brody came to Baldwin's cell and told Baldwin, "you'll be alright I'll call the nurse when I go to lunch." By the time Brody left his shift, the nurse had not yet arrived. Baldwin alleges that the next correctional officer to come on the afternoon shift called Nurse Anderson, who came to Baldwin's cell with a wheelchair and transported him to the health care unit.

After wheeling Baldwin into the holding area outside the health care unit, Nurse Anderson told Baldwin he would have to wait until she finished her rounds. Baldwin waited for four hours before Nurse Anderson took him to the Cermak health division for treatment. On arrival there Nurse Anderson "let [Baldwin] out of the wheelchair" and told him, "Cermak staff will take care of your injury from here." Baldwin later asked Correctional Officers Gibbons and Cooper for a wheelchair, but they did not give him one. According to Baldwin he did not receive medical attention until 8:30 a.m. the next morning.

Baldwin alleges that he notified the "Cook County Sheriff's office," through the grievance process, about the water in his cell and about his slip and fall. Under Section 1983 Baldwin seeks compensation and punitive damages for what he describes as a denial of medical care for his alleged back injury -- a claim as to which the caselaw does indeed apply a "deliberate indifference" standard.

**In Forma Pauperis Status**

Under 28 U.S.C. § 1915[1] the first order of business calls for review of the Application. For that purpose Section 1915(a)(2) requires the submission of a certified copy of Baldwin's trust fund account statement for the six-month period immediately preceding the filing of the Complaint, and he has done so. As always, this Court has applied the "mailbox rule" established in Houston v. Lack, 487 U.S. 266 (1988) to determine the endpoint of that six-month period, and it has calculated the average monthly deposits to Baldwin's account (see Section 1915(b)(1)(A)) as $10, so that 20% of that figure establishes $2 as the required initial partial filing fee (id.).

---

[1] All further references to Title 28's provisions will simply take the form "Section --," omitting the prefatory "28 U.S.C. §."

Accordingly Baldwin is assessed that initial partial filing fee of $2 plus an amount equal to 20% of any deposits to his trust fund account after March 10, 2015, and the County Jail trust fund officer is ordered to collect that amount from Baldwin's trust fund account there and to pay it directly to the Clerk of Court ("Clerk"):

> Office of the Clerk
> United States District Court
> 219 South Dearborn Street
> Chicago IL 60604
>
> Attention: Fiscal Department

After such payment the trust fund officer at the County Jail (or at any other correctional facility where Baldwin may hereafter be confined) is authorized to collect monthly payments from his trust fund account in an amount equal to 20% of the preceding month's income credited to the account. Monthly payments collected from the trust fund account shall be forwarded to the Clerk each time the amount in the account exceeds $10 until the full $350 filing fee is paid. Both the initial payment and all future payments shall clearly identify Baldwin's name and the 15 C 2478 case number assigned to this action. To implement these requirements, the Clerk shall send a copy of this memorandum opinion and order to the County Jail's trust fund officer.

## **Viability of Baldwin's Complaint**

With that initial determination completed, Section 1915A next calls for this Court to conduct a prompt threshold review of the Complaint. Even though pro se pleadings are to be liberally construed (see, e.g., Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam)), a complaint still does not pass muster if it does not plead "enough facts to state a claim to relief that is plausible on its face" (Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). For that purpose courts "are not bound to accept as true a legal conclusion couched as a factual

allegation" (id. at 555), and a plaintiff may also plead himself out of court by alleging facts that defeat his claim (Atkins v. City of Chicago, 631 F.3d 823, 832 (7th Cir. 2011) and cases cited there).

Here Baldwin's allegations establish that from the time of what appears to be a relatively minor back injury to the time of treatment not more than 20 hours later, he received a steady progression of attention from correctional officers and medical personnel.  And while Baldwin might not have received treatment as quickly as he would have liked, his allegations show that he was not denied medical care, nor was any delay in treatment at any step along the way significant enough to rise to the level of a constitutional violation (see, e.g., Gutierrez v. Peters, 111 F.3d 1364, 1374 (7th Cir. 1997) (no valid claim for four day delay in treatment of infected cyst)).  Indeed, the common experience of humankind who have had occasion to call on hospital resources these days might well support the taking of judicial notice that if Baldwin had been free to seek care from a private medical provider he might very well have waited a similar amount of time or longer for appropriate medical attention, or at the emergency room, than Baldwin experienced at the County Jail and Cermak.[2]

While what had been said to this point applies to all defendants and precludes any amendment that could even arguably salvage the Complaint, it is worth a moment or two to observe that Sheriff Dart is particularly out of place in this lawsuit.  Section 1983 triggers potential personal liability predicated on fault, so that the targeted individual must have caused

---

[2]  Whether or not that is so, it is fundamental to Section 1983 jurisprudence that there is a wide gulf between (1) what might constitute medical malpractice (actionable at common law but not as a constitutional matter) and (2) "deliberate indifference to serious medical needs of prisoners," which Estelle v. Gamble, 429 U.S. 97, 104 (1976) and its almost countless progeny have taught is the standard at the heart of the Eighth Amendment's proscription against cruel and unusual punishment so as to bring Section 1983 into play in cases such as this one.

or participated in a constitutional deprivation (see, e.g., <u>Kuhn v. Goodlow</u>, 678 F.3d 552, 556 (7th Cir. 2012) and cases cited there). And of course the seminal opinion in <u>Monell v. New York Dep't of Soc. Servs.</u>, 436 U.S. 658, 691 (1978) rejects respondeat superior responsibility on Sheriff Dart's part. Here there is not even a hint that Sheriff Dart was personally involved in the care Baldwin received or did not receive on February 20, 2015, and to name him in his "official capacity" adds nothing to the mix (<u>Kentucky v. Graham</u>, 473 U.S. 159, 165-66 (1985)).

## Conclusion

For the reasons discussed above, Baldwin's Application is granted, but his Complaint is dismissed with prejudice for failure to state a claim. This dismissal counts as a "strike" under Section 1915(g). This action is terminated.

If Baldwin wishes to appeal this dismissal, he may file a notice of appeal in this Court within 30 days after the entry of judgment (Fed. R. App. P. 4(a)(1)(A)). Baldwin should understand that if he chooses to appeal he will be responsible for paying the $505 in appellate filing fees, though this Court expresses no opinion as to whether or not he might qualify for an installment-payment procedure as to that fee comparable to the one described earlier in this opinion. Finally, if the appeal is found to be nonmeritorious, Baldwin may accumulate another "strike" under Section 1915(g).

_____
Milton I. Shadur
Senior United States District Judge

Date: April 10, 2015

- 5 -